Filed 5/2/13  In re R.G. CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re R.G., a Person Coming Under the Juvenile Court Law. | B239442 <br><br> (Los Angeles County Super. Ct. No. FJ49167) |
| THE PEOPLE, <br><br>    Plaintiff and Respondent, <br><br>    v. <br><br> R.G., <br><br>    Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Cynthia Loo, Juvenile Court Referee.  Affirmed.

Arielle Bases, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Margaret E. Maxwell and Tasha G. Timbadia, Deputy Attorneys General, for Plaintiff and Respondent.

# I.  INTRODUCTION

The minor, Richard G., appeals from the juvenile court's Welfare and Institutions Code section 602 wardship order.  The juvenile court sustained felony allegations the minor carried a concealed dirk or dagger in violation of former Penal Code[1] section 12020, subdivision (a)(4).  (Stats. 2004, ch. 247, § 7, p. 2981.)  Section 12020, subdivision (a)(4) is now recodified at section 21310.  (Stats. 2010, ch. 711, §§ 4-5.)  The minor was placed home on probation.

The minor contends there was insufficient evidence the weapon he possessed was a dirk or dagger.  The minor further asserts unauthorized destruction of the knife denied him his due process right to review all legally admissible evidence and to an accurate record on appeal.  We affirm the juvenile court order.

# II.  DISCUSSION

## A.  There Was Substantial Evidence The Minor's Weapon Was A Dirk Or Dagger

### 1.  Standard of review

The minor contends there was insufficient evidence the knife found on his person was a dirk or dagger within the meaning of former section 12020, subdivision (a)(4).  The standard of review in criminal proceedings involving minors is the same as that involving adults.  (*In re V.V.* (2011) 51 Cal.4th 1020, 1026; *In re Muhammed C.* (2002) 95 Cal.App.4th 1325, 1328.)  We view the evidence in the light most favorable to the adjudication and determine whether any rational trier of fact could have found the minor guilty beyond a reasonable doubt.  (*In re V.V., supra,* 51 Cal.4th at p. 1026; *People v.*

---

[1]     All further statutory references are to the Penal Code unless otherwise noted.

*Medina* (2009) 46 Cal.4th 913, 924-925, fn. 2.)  We find substantial evidence supported the juvenile court's determination.

## 2.  "Dirk or dagger" defined

A dirk or dagger is defined in former section 12020, subdivision (c)(24) as follows:  "[A] 'dirk' or 'dagger' means a knife or other instrument with or without a handguard that is *capable of ready use* as a stabbing weapon that may inflict great bodily injury or death."  (Italics added.)  A "switchblade knife" was defined in former section 653k.  (Stats. 2001, ch. 128, § 1.)  A "switchblade knife" can also be a dirk or dagger.  (*People v. Plumlee* (2008) 166 Cal.App.4th 935, 940; *In re Luke W.* (2001) 88 Cal.App.4th 650, 656.)  A "switchblade knife" was defined as, "[A] knife having the appearance of a pocketknife and includes a spring-blade knife, snap-blade knife, gravity knife or any other similar type knife, the blade or blades of which are two or more inches in length and *which can be released automatically* by a flick of a button, pressure on the handle, flip of the wrist or other mechanical device, or is released by the weight of the blade or by any type of mechanism whatsoever."  (Former § 653k, italics added.)  Section 653k has been recodified as sections 16965, 17235 and 21510.  (Stats. 2010, ch. 711, §§ 4-5.)  The categories of knives expressly prohibited by the language of former section 653k are not exhaustive.  (*In re Gilbert R.* (2012) 211 Cal.App.4th 514, 518; *People ex rel. Mautner v. Quattrone* (1989) 211 Cal.App.3d 1389, 1395.)  As the Court of Appeal for the First Appellate District has held, "This language is intended to cover different types of knives which operate similarly to those expressly listed."  (*People ex rel. Mautner v. Quattrone, supra,* 211 Cal.App.3d at p. 1395.)

A knife with a blade that cannot be automatically exposed is a dirk or dagger only if its blade is locked in an open position.  Former section 12020, subdivision (c)(24) provided:  "A nonlocking folding knife, a folding knife that is not prohibited by Section 653k[, i.e., a folding knife that is not a switchblade], or a pocketknife is capable of ready use as a stabbing weapon that may inflict great bodily injury or death only if the blade of

the knife is exposed and locked into position." And former section 653k stated, "'Switchblade knife' does not include a knife that opens with one hand utilizing thumb pressure applied solely to the blade of the knife or a thumb stud attached to the blade, provided that the knife has a detent or other mechanism that provides resistance that must be overcome in opening the blade, or that biases the blade back toward its closed position."[2] A "detent" is defined as follows, "A 'detent' is 'a device (as a catch, dog, or spring-operated ball) for positioning and holding one mechanical part in relation to another in a manner such that the device can be released by force applied to one of the parts.' (Merriam-Webster m-w.com Dictionary <http://www.meriam-webster.com/dictionary/detent > (as of November 27, 2012); see also 4 Oxford English Dict. (2d ed. 1989) p. 545 [defining 'detent' as '[a] stop or catch in a machine which checks or prevents motion'].)" (*In re Gilbert* R., *supra*, 211 Cal.App.4th at p. 518.)

The key feature distinguishing a dirk or dagger from other types of knives is its being "capable of ready use as a stabbing" weapon or instrument. (Former § 12020, subd. (c)(24); see *People v. Plumlee, supra,* 166 Cal.App.4th at pp. 939-940.) As the Court of Appeal for the Fourth Appellate District, Division One has explained: "[T]he prohibition against carrying a concealed dirk or dagger is designed to give third parties the opportunity to protect themselves from the risk of a surprise attack by a person carrying a weapon. (See *In re Luke W., supra,* 88 Cal.App.4th at p. 653.) . . . [T]he folding or pocketknife exception is consistent with the statute's objective because folded

---

[2] Former, section 653k provided in part: "Every person . . . who carries upon his or her person . . . a switchblade knife having a blade two or more inches in length is guilty of a misdemeanor. [¶] For the purposes of this section, 'switchblade knife' means a knife having the appearance of a pocketknife and includes a spring-blade knife, snap-blade knife, gravity knife or any other similar type knife, the blade or blades of which are two or more inches in length and which can be released automatically by a flick of a button, pressure on the handle, flip of the wrist or other mechanical device, or is released by the weight of the blade or by any type of mechanism whatsoever. 'Switchblade knife' does not include a knife that opens with one hand utilizing thumb pressure applied solely to the blade of the knife or a thumb stud attached to the blade, provided that the knife has a detent[2] or other mechanism that provides resistance that must be overcome in opening the blade, or that biases the blade back toward its closed position."

knives are not capable of ready use 'without a number of intervening machinations that give the intended victim time to anticipate and/or prevent an attack.'  (*Ibid.*)"  (*People v. Mitchell* (2012) 209 Cal.App.4th 1364, 1371-1372.)

### 3.  Application to the present case

We view the evidence in the light most favorable to the juvenile court's findings. The minor was carrying a knife concealed in his right front pant pocket.  The blades were completely closed.  The knife was approximately 11 inches long with a 3-inch blade at each end.  The blades could be opened rapidly to a locked position.  There were two ways to rapidly expose the blades to a fully open and locked position using only one hand. First, thumb screws on either end of the knife allowed the blades to be rapidly exposed. Officer Gregorio Rangel testified as to the purpose of a thumb screw on a knife.  Officer Rangel testified a thumb screw is a screw attached to the blade or the actual body of the knife that allows a person to rapidly open the weapon to a fully open, locked position, "[The knife] would open rapidly if you just put your thumb on the thumb screw . . . and swipe it forward, and it will lock in the fully outward position."  Officer Rangel further explained:  "You would apply pressure downward [on the thumbscrew] therefore making the blades more easily swing out.  It would release pressure on [the blades]."  Second, the minor's weapon could be opened with one hand by a flick of a wrist.  It functioned like a gravity knife, that is, the blade could be released automatically.  (See former § 653k.) The minor's knife was capable of inflicting serious bodily harm.  It was the ability to access the blade rapidly that distinguished this switch-blade type weapon from other non-switchblade knives.  Officer Rangel testified, "[This knife is] more dangerous . . . because of the double blades on both sides both facing opposite directions [and] because [it can] be used [for] stabbing, dragging, and [has a] serrated edge, and also it can be easily concealed and retrieved."

This constituted substantial evidence the weapon the minor carried concealed on his person was a dirk or dagger within the meaning of former section 12020, subdivision

(a)(4). Given the ability to rapidly expose the blades to a fully open and locked position, it was "capable of ready use as a stabbing" weapon or instrumentality. Further, it was a dangerous weapon capable of inflicting great bodily injury or death. (Former § 12020, subd. (c)(24); see *People v. Plumlee, supra,* 166 Cal.App.4th at pp. 940-941; *In re Luke W., supra,* 88 Cal.App.4th at p. 656; 17 Cal.Jur.3d, Criminal Law: Crimes Against Administration of Justice and Public Order, § 219.)


## B.  There Was No Due Process Violation


Officer Rangel testified he tried to retrieve the knife from evidence on the day of the adjudication. The knife could not be found. Officer Rangel was told law enforcement authorities had disposed of the knife.

The minor contends "unauthorized" destruction of the knife prior to adjudication denied him his due process right to review all legally admissible evidence and to an accurate record on appeal. The minor argues: "[T]he unauthorized destruction of the knife prevented the trial court from properly examining the evidence on the crucial issue in the case. It also denied [the minor] the opportunity for a fair appellate review of the evidence and is therefore a denial of due process." This issue was not raised in the juvenile court. There is no evidence the minor made any attempt to secure the knife as evidence prior to trial. The minor did not object to the absence of the knife. He did not request a hearing of any kind. He did not seek a showing the knife had in fact been destroyed. He made no attempt to reconstruct the missing exhibit. The minor's due process argument has been forfeited. (*People v. Skiles* (2011) 51 Cal.4th 1178, 1189; *People v. Williams* (1997) 16 Cal.4th 635, 661-662.)

Even if the issue had not been forfeited, we would not find any error or constitutional deprivation. First, both Officer Rangel and the minor had examined the knife. Each testified and described its characteristics in detail. Further, three photographs of the weapon were admitted in evidence. The photographs showed the knife in fully open, completely closed and partially open positions. The purported

6

destruction of the knife did not prevent the juvenile court from examining evidence on the crucial issue—whether the knife in question was a dirk or dagger.  (See *People v. Sassounian* (1986) 182 Cal.App.3d 361, 394; *People v. Tierce* (1985) 165 Cal.App.3d 256, 263.)

Second, the minor has a due process right to a record on appeal adequate to permit meaningful appellate review.  (*People v. Bennett* (2009) 45 Cal.4th 577, 589; *People v. Young* (2005) 34 Cal.4th 1149, 1170; *People v. Alvarez* (1996) 14 Cal.4th 155, 196, fn. 8.)  The appellate record includes exhibits admitted into evidence, refused or lodged.  (Cal. Rules of Court, rule 8.320(e); *People v. Osband* (1996) 13 Cal.4th 622, 663; *People v. Howard* (1992) 1 Cal.4th 1132, 1165.)  The burden is on the minor to show the absence of the exhibit on appeal is prejudicial to him.  (*People v. Bennett, supra,* 45 Cal.4th at p. 589; *People v. Young, supra,* 34 Cal.4th at p. 1170; *People v. Osband, supra,* 13 Cal.4th at p. 663; *People v. Howard, supra,* 1 Cal.4th at p. 1165.)  The minor cannot make that showing.  The knife was never introduced in evidence in the juvenile court and thereby not considered by the trier of fact.  Therefore, it is not part of the record on appeal.  The absence of evidence before us that was never introduced in the juvenile court cannot prejudice the minor's appeal.  And we have examined the photographs of the weapons which were received in evidence.  The minor has not been denied his due process right to an adequate record on appeal. (See *People v. Catlin* (2001) 26 Cal.4th 81, 170-171; *People v. Peevy* (1998) 17 Cal.4th 1184, 1207-1208, fn. 4.)

### III.  DISPOSITION

The wardship order is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


TURNER, P. J.

We concur:



KRIEGLER, J.



O'NEILL, J.*

---

*     Judge of the Ventura Superior Court, assigned by the Chief Justice pursuant to article I, section 6, of the California Constitution.